IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN L. BATIE,<br><br>    Petitioner,<br><br>  v.<br><br>RANDY GROUNDS, Warden,<br><br>    Respondent.<br>_____ | No. C 10-3089 MMC (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS; GRANTING EXTENSION OF TIME TO OPPOSE MOTION TO DISMISS; DENYING CERTIFICATE OF APPEALABILITY**<br><br>**(Docket Nos. 11, 12)** |

On July 19, 2010, petitioner, a California prisoner incarcerated at the Correctional Training Facility in Soledad, California, and proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging former California Governor Schwarzenegger's ("Governor") reversal of a parole grant by the California Board of Parole Hearings ("Board"). Thereafter, the Court ordered respondent to show cause why the petition should not be granted or, alternatively, to file a motion to dismiss.

Now pending before the Court is respondent's motion to dismiss the petition on the ground that the petition fails to state a claim for federal habeas relief. Petitioner has opposed the motion,[1] and respondent has filed a reply.

---

[1] Good cause appearing, petitioner's motion for an extension of time to file an opposition to the motion to dismiss will be granted. The opposition filed on March 16, 2011 is deemed timely.

**BACKGROUND**

According to the allegations in the petition, in 1981, in the Superior Court of San Diego County, petitioner was found guilty of second degree murder with personal use of a firearm. He was sentenced to a term of seventeen years to life in state prison.

The subject of the instant petition is petitioner's September 24, 2007 parole suitability hearing, and subsequent action taken by the Governor. In particular, at that hearing, the Board found petitioner suitable for parole and set a release date (Pet. Ex. B at 13, 15), and, on February 7, 2008, the Governor reversed the Board's decision (id. at 15).

Petitioner challenged the Governor's reversal by filing a habeas petition in the San Diego Superior Court ("Superior Court"). In an opinion issued March 4, 2009, the Superior Court denied relief, finding sufficient evidence existed to support the Governor's decision to reverse the Board. (Pet. Ex. A at 6.) Petitioner next filed a habeas petition in the California Court of Appeal, which was denied in a reasoned opinion dated March 9, 2010. (Pet. Ex. B.) Petitioner then filed a habeas petition in the California Supreme Court; his petition was summarily denied on June 17, 2010. (Pet. Ex. C.)

Petitioner thereafter filed the instant petition, alleging that: (1) the Governor's reversal of the Board's decision to grant him parole violated his right to due process because the decision was not supported by "any evidence" that petitioner remains an unreasonable risk of danger to public safety if paroled, and (2) the Governor's "executive policy and practice of rare parole" further violated his due process rights. (Pet. at 6.)

**DISCUSSION**

A federal district court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

1. <u>Reversal of Board's Parole Grant</u>

Petitioner's first claim is that the Governor's reversal of the Board's decision to grant him parole violated his federal constitutional right to due process because the decision was

2

not supported by some evidence that petitioner at that time posed a danger to society if released. Respondent moves to dismiss the claim on the ground that it fails to state a basis for federal habeas relief. The Court agrees.

Under California law, prisoners serving indeterminate life sentences, like petitioner, become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005). Regardless of the length of time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15 ("CCR"), § 2402(a). In making the determination as to whether a prisoner is suitable for parole, the Board must consider various factors specified by state statute and parole regulations. In re Rosenkrantz, 29 Cal. 4th 616, 653-54 (2002); CCR § 2402(b)–(d). The Governor has the authority to review the Board's decision, subject to procedures provided by statute. In re Lawrence, 44 Cal. 4th 1181, 1203 & n.9 (2008).[2] When a state court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety. Id. at 1212.

As noted, petitioner claims the Governor's reversal of the Board's decision to grant parole was in violation of federal due process, because, petitioner contends, the Governor's decision was not supported by some evidence that petitioner at that time posed a current danger to society if released. Federal habeas corpus relief is unavailable for an error of state law. Swarthout v. Cooke, 131 S. Ct. 859, 861 (per curiam) (2011). Under certain

---

[2]"The statutory procedures governing the Governor's review of a parole decision pursuant to California Constitution article V, section 8, subdivision (b), are set forth in Penal Code section 3041.2, which states: '(a) During the 30 days following the granting, denial, revocation, or suspension by a parole authority of the parole of a person sentenced to an indeterminate prison term based upon a conviction of murder, the Governor, when reviewing the authority's decision pursuant to subdivision (b) of Section 8 of Article V of the Constitution, shall review materials provided by the parole authority. [¶] (b) If the Governor decides to reverse or modify a parole decision of a parole authority pursuant to subdivision (b) of Section 8 of Article V of the Constitution, he or she shall send a written statement to the inmate specifying the reasons for his or her decision.'" Lawrence, 44 Cal. 4th 1203 n.9.

3

circumstances, however, state law may create a liberty or property interest that is entitled to the protections of federal due process. In particular, while there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when, or unless, certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest. See id. at 11-12. The Ninth Circuit has determined California law creates such a liberty interest in release on parole. Cooke, 131 S. Ct. at 861-62.

When a state creates a liberty interest, "the Due Process Clause requires fair procedures for its vindication," and federal courts "will review the application of those constitutionally required procedures." Id. at 862. In the context of parole, the procedures necessary to vindicate such interest are minimal: a prisoner receives adequate process when "he [is] allowed an opportunity to be heard and [is] provided a statement of the reasons why parole was denied." Id. "The Constitution," [the Supreme Court has held], "does not require more." Id. That is, there is no due process requirement that a parole denial be supported by "some evidence." See Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011) ("Cooke was unequivocal in holding that if an inmate seeking parole receives an opportunity to be heard, a notification of the reasons as to denial of parole, and access to [the inmate's] records in advance, that should be the beginning and end of the inquiry into whether the inmate received due process.") (internal brackets, quotation and citation omitted).

Here, although petitioner challenges a parole denial by the Governor as opposed to the Board, the Court's analysis remains unchanged. In particular, the Ninth Circuit has recently held "the Due Process Clause does not require that the Governor hold a second suitability hearing before reversing a parole decision." Styre v. Adams, 645 F.3d 1106, 1106 (9th Cir. 2011). In Cooke, one of the prisoners, like petitioner here, had been found unsuitable for parole by the Governor, rather than the Board. Cooke, 131 S. Ct. at 861. The Supreme Court made no distinction in terms of the due process required for that inmate as compared to those

4

1   prisoners challenging Board denials.  Consequently, as the Ninth Circuit observed, Cooke
2   "implicitly rejects [any such] distinction."  Styre, 645 F.3d at 1106.

3        Here, the record shows petitioner received at least the amount of due process found by
4   the Supreme Court to be adequate in Cooke.  Specifically, the record shows the following:
5   petitioner was represented by counsel at his hearing (Pet. Ex. A at 4); the Board read into the
6   record the facts of the commitment offense taken from the appellate court opinion and a prior
7   Board report (Pet. Ex. B at 4-5, 8); petitioner discussed his version of the commitment
8   offense (id. at 8); the Board discussed with petitioner his prior juvenile and adult criminal
9   record, his social history and upbringing, his job experience, his achievements while
10  incarcerated, his parole plans, and the mental health reports prepared for the hearing (id. at 9-
11  12); petitioner made a closing statement to the Board (id. at 13); and petitioner received a
12  thorough explanation as to why the Board found him suitable for parole (id. at 13-15).  The
13  Governor considered the same factors as the Board but concluded petitioner still posed an
14  unreasonable risk of danger to society if released.  (Id. at 15.)  After reviewing the transcript
15  of the Board hearing and the opinion of the California Court of Appeal on direct review, the
16  Governor made his decision based on the "atrocious" nature of petitioner's crime,
17  petitioner's failure to accept full responsibility for the crime, petitioner's "lengthy" criminal
18  record, and petitioner's "misconduct" in prison.  (Pet. Ex. A at 3-4, Ex. B at 15-17).
19  Petitioner received a document from the Governor's office that explained the reasons
20  supporting the Governor's reversal of the Board's 2007 decision.  (Pet. Ex. F at 19.)

21       Although neither petitioner nor respondent has submitted a transcript of the 2007
22  hearing at issue here, complete copies of the state courts' decisions from petitioner's state
23  habeas petitions have been submitted, and it is clear therefrom that petitioner never claimed
24  in state court that he was denied an opportunity to speak at his hearing or an opportunity to
25  contest the evidence against him.  Nor did petitioner claim he was denied access to his
26  records in advance of his parole hearing, or that he was not notified of the reasons for both
27  the Board's and Governor's decisions.  Similarly, petitioner has made no such assertion in
28  the instant petition.  Rather, petitioner's due process claim pertains solely to petitioner's

5

assertion that the Governor lacked "some evidence" of petitioner's dangerousness. Because California's "some evidence" rule is not a substantive federal requirement, whether the Governor's decision to deny parole was supported by some evidence of petitioner's then current dangerousness is not relevant to this Court's decision. Cooke, 131 S. Ct. at 862-63. The Supreme Court has made clear that the only federal right at issue herein is procedural; consequently, "it is no federal concern . . . whether California's 'some evidence' rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied." Id. at 863.

Accordingly, petitioner is not entitled to habeas relief on this claim.

2.   Anti-Parole Policy

Petitioner's second claim is that the Governor's "policy and practice" of rarely granting parole violated his right to due process. For the reasons set forth below, this claim also lacks merit.

First, petitioner has not provided sufficient evidentiary support to demonstrate an anti-parole or no-parole policy at any time existed. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). In support of the instant petition, petitioner submits the supplemental briefing he filed with the California Court of Appeal on state habeas, wherein he argued former Governor Davis reversed approximately 99% of parole grants and that former Governor Schwarzenegger reversed approximately 70% of parole grants. (Pet. Ex. E at 24.)[3] Petitioner, however, offers no support for his asserted figures. Further, even if petitioner's statistics are accepted as correct, a high percentage of parole denials provides no proof of a systematic bias against parole. Indeed, such statistics have been cited without criticism by the Supreme Court. See California Dept. of Corrections v. Morales, 514 U.S. 499, 510-11 (1995) (approving amendment of parole procedures to allow Board to decrease frequency of suitability hearings, based on, inter alia, statistics showing 90 percent of all

---

[3] Former Governor Davis's reversal rate is irrelevant here because Governor Davis did not reverse petitioner's 2007 parole grant.

6

California inmates were found unsuitable for parole at initial hearing and 85 percent were found unsuitable at subsequent hearings). In short, petitioner's numbers do not lead to the conclusion that either the Board or the Governor failed to base each individual denial on some evidence.

Moreover, even if petitioner were to provide evidence sufficient to prove an anti-parole policy, he would not be eligible for habeas relief, because he has not shown he was subject to such a policy. To the contrary, the Governor's explanation for his reversal of the Board's decision demonstrates petitioner received an individualized assessment of his suitability for parole. As noted above, the Governor, in concluding that petitioner was not suitable for parole, explained that he considered the specific nature of petitioner's crime, his failure to accept full responsibility, his extensive criminal history, and his prison disciplinary record. Based on the Governor's explanation, both the Superior Court and Court of Appeal determined the Governor's decision to deny petitioner parole was based on "some evidence." As the Court of Appeal explained, "[t]hat the Governor may not have given the same weight to favorable factors as the Board did or that [petitioner] would have given them does not show a lack of individualized consideration." (Pet. Ex. B at 29.) In sum, petitioner has not shown he was denied parole on the basis of a general anti-parole or no-parole policy.

Accordingly, petitioner is not entitled to habeas relief on this claim.

**CERTIFICATE OF APPEALABILITY**

A certificate of appealability will be denied with respect to petitioner's claims. See 28 U.S.C. § 2253(c)(1)(a); Rules Governing Habeas Corpus Cases Under § 2254, Rule 11 (requiring district court to issue or deny certificate of appealability when entering final order adverse to petitioner). Specifically, petitioner has failed to make a substantial showing of the denial of a constitutional right, as he has not demonstrated that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

//
//

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. Petitioner's motion for an extension of time to file an opposition to the motion to dismiss is hereby GRANTED.

2. Respondent's motion to dismiss the petition is hereby GRANTED.

3. A certificate of appealability is hereby DENIED.

This order terminates Docket Nos. 11 and 12.

The Clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

DATED: August 23, 2011

_____
MAXINE M. CHESNEY
United States District Judge

8